35 62
116 505

# FLEMING *vs.* GILMER.

[BILL IN EQUITY BY FEME COVERT, AGAINST TRUSTEE'S EXECUTOR AND LEGATEE, FOR RECOVERY OF TRUST PROPERTY, WITH ACCOUNT OF HIRE AND PROFITS.]

1. *Statute of limitations, and lapse of time, as applied in equity between trustee and cestui que trust.*—A married woman cannot maintain a bill in equity against the executor of a deceased trustee under an ante-nuptial settlement, for the recovery of the slaves conveyed by the deed, with an account of their hire and profits, when there was a surviving trustee for several years, who might have maintained an action for the recovery of the property, but suffered the statute of limitations to effect a bar against him; yet, if the executor held in subordination to, and in recognition of her rights under the deed, her claim is not barred.

2. *Multifariousness.*—A bill, filed by a married woman, against the executor and sole legatee of her deceased trustee, seeking from the executor an account of the hire and profits of the trust property during his own pos-

session and that of his testator, and from the legatee an account of the hire and profits during his possession, with the property itself, and also the appointment of another trustee, is not multifarious.

3. *When trustee's administrator is not necessary party to bill by cestui que trust against co-trustee's executor.*—The administrator of a deceased trustee, under an ante-nuptial deed, is not a necessary party to a bill filed by the *cestui que trust* against the executor and legatee of another co-trustee, seeking a recovery of the trust property, an account of the hire and profits, and the appointment of another trustee ; when it appears that his intestate, although he accepted the trust, never had possession or control of any of the trust property, and no account is prayed against the administratior.

4. *When remainder-men may be joined as defendants to bill by life-tenant.*—Where slaves are conveyed, by ante-nuptial settlement, to a trustee, for the sole and separate use of the wife during life, with remainder to the children of the marriage living at her death ; and the wife, during the coverture, files a bill against the executor and legatee of the deceased trustee, asking the recovery of the slaves, an account of their hire and profits, and the appointment of another trustee,—the children by the marriage may be joined as defendants to the bill.

5. *Statute of limitations applicable to feme covert.*—The last clause of section 2486 of the Code, providing that the exception therein contained, in favor of *femes covert*, must not " extend to a married woman in respect to her separate estate," applies only to separate estates created by statute.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed on the 9th February, 1858, by Mrs. Harriet C. Fleming, a married woman, suing by her next friend, against her husband, William H. Fleming, their several children, John McKenzie, as executor of Henry C. Spencer, deceased, and Thomas M. Gilmer and wife. Its material allegations were, in substance, the following : That the complainant and her said husband were married in South Carolina, where they then resided, on the 19th November, 1818 ; that an ante-nuptial contract was executed between them, by which certain slaves, then belonging to complainant, were conveyed to Henry S. Spencer and Matthew Fleming, as trustees, in trust for the complainant's sole and separate use during her life, with remainder to the children of the marriage, if any, and, in default of children, to the surviving husband ; that the deed was duly recorded, and both the trustees accepted the trust; that the trustees permitted a portion of the property, " perhaps the whole of it, to go into the hands

of complainant's husband, but what portion of the same she cannot state, as she was not kept advised of the management of the property;" that the parties all removed to Alabama some time prior to 1837 ; that Matthew Fleming, one of the trustees named in the deed, removed to Texas in 1837, where he remained until September 1852, when he returned to Alabama, and died in 1853 ; that Henry S. Spencer, in the absence of said Fleming, became the sole acting trustee, and wasted and misapplied the trust property ; that one of the slaves conveyed by the deed, Clarissa by name, went into the possession of said Spencer, as such trustee, in 1834, and was retained by him until his death, which happened in 1844 ; that said slave and her increase then passed into the possession of McKenzie, as executor of said Spencer, who retained them until January, 1858, when they were taken from him, against his consent, by Thomas M. Gilmer, who had married the only daughter and legatee of said Henry S. Spencer, and who claimed·said slaves as belonging to his said wife under the will of her father ; that said Spencer never set up any claim whatsoever to said slaves, other than as trustee, and that McKenzie always recognized complainant's title, and would have yielded up the possession of the slaves to her, and accounted to her for the hire, had it not been for the unfounded claim of Gilmer, against which he desired the protection of a decree in chancery.

The prayer of the bill was as follows : " That your Honor, on final hearing, will take an account of the hire of said slaves while they were in the possession of the said Henry S. Spencer, and charge the same upon his executor, John McKenzie ; and if he has no assets of said estate, and the same have passed into the hands of said Thomas M. Gilmer and his wife, that then they be charged with said hire to the extent of the assets so received by them ; and that an account be also taken of the hire of said slaves while in the possession of the said McKenzie, as well as for the time they have been in the possession of said Gilmer and wife, and charged upon the parties respectively, or upon the assets of said Henry Spencer's estate ;

and that complainant have a decree for said slaves; and that another trustee be appointed, in lieu of the trustees named in said deed, to hold said slaves subject to the trusts and limitations mentioned in said deed; and that complainant may have such other and further relief as the circumstances of her case may require." &c.

Gilmer and wife and McKenzie separately demurred to the bill—"1st, for the want of equity; 2d, because the lapse of time appearing on the face of the bill presents a full defense to the relief sought; 3d, because the complainant's children, having no interest in the relief prayed for, are not proper parties to the bill; 4th, because the administrator of Matthew Fleming should be a party defendant; and, 5th, because the bill is multifarious."

The chancellor sustained the demurrer, and dismissed the bill, on the ground that the complainant's remedy was barred by the statute of limitations and lapse of time; and his decree is now assigned as error.

WM. P. CHILTON, for appellant.—1. The complainant's right to come into equity, under the facts disclosed in her bill, is sustained by the following authorities: Gould v. Hill, 18 Ala. 84; Bridges & Co. v. Phillips, 25 Ala. 136; Love v. Graham, 25 Ala. 187; Crabb v. Thomas, 25 Ala. 212; Gerald v. McKenzie, 27 Ala. 166.

2. The claim asserted in the bill is neither barred by the statute of limitations, nor objectionable as a stale demand. Courts of equity adopt and give effect to the exceptions contained in the statute of limitations.—Crocker v. Clements, 23 Ala. 296. The cause of action accrued while the complainant was a married woman; and, consequently, she is not barred.—Michan v. Wyatt, 21 Ala. 813. The statute did not begin to run until there was an adverse possession.—Boyd v. Beck, 29 Ala. 703. The bill alleges, that the executor, as well as his testator, held in subordination to the trust.

3. The bill is not multifarious.—Gaines v. Chew, 2 How. (U. S.) 642; Savage v. Benham, 17 Ala. 119; Horton v. Sledge, 29 Ala. 478.

WILLIAMS & GRAHAM, *contra*.—1. On the death of Henry Spencer, the title to the trust property at once devolved on his co-trustee, Matthew Fleming, who might have maintained an action for its recovery.—Parsons v. Boyd, 20 Ala. 112; Hawkins v. May, 12 Ala. 673; Taylor v. Benham, 5 How. 233; Hill on Trustees, 442; Powell v. Knox, 16 Ala. 364; Mauldin, Montague & Co. v. Armistead, 14 Ala. 702. Matthew Fleming survived until 1853, when the statute of limitations had effected a bar against him; and when the trustee is barred at law, the *cestui que trust* is also barred in equity.—Bryan v. Weems, 29 Ala. 423; Colburn v. Broughton, 9 Ala. 351.

2. The bill is multifarious. The matters of account between complainant and McKenzie have no necessary connection with the matters of account between complainant and Gilmer and wife.—1 Dan. Ch. Pr. 384, and notes; Story's Eq. Pl. § 271; Bryan v. Blythe, 4 Blackf. 249; Dick v. Dick, 1 Hogan, 290. A demurrer for multifariousness goes to the whole bill, and it is not necessary to specify the parts which are multifarious.—1 Dan. Ch. Pr. 621.

STONE, J.—This case comes before us on a demurrer to the bill, which requires us to regard as true every material averment which the bill contains.—Bobe v. Frowner, 18 Ala. 89; Story's Eq. Pl. § 452.

The complainant concedes in her bill, that she has been out of the possession of the slaves she sues for since the year 1834; a period of twenty-four years, when her bill was filed. She avers, that her trustee, Mr. Spencer, held the property ten years, until he died in 1844; and that Mr. McKenzie, the executor of Mr. Spencer's will, held the property from the time of the death of Mr. Spencer until a short time before the institution of this suit, when it went into the possession of Mr. and Mrs. Gilmer. For some nine years after the possession of Mr. McKenzie commenced, the other trustee named in the ante-nuptial contract was in life, and could have maintained a suit for the recovery of the property. If these facts stood alone, and unexplained, the right of the complainant

would be absolutely barred, under the authority of Bryan v. Weems, 29 Ala. 423.

The case made by the bill, however, is not of this character. According to its averments, both Mr. Spencer during his life, and Mr. McKenzie during the continuance of his possession, held the slaves in subordination to, and in recognition of the rights of Mrs. Fleming in and to the property. This would not constitute an adverse holding, and, consequently, did not ripen into a title.—See Blackwell's Adm'r v. Blackwell's Distributees, 33 Ala. 57 ; Angell on Lim, § § 168–174 ; McArthur v. Carrie, 32 Ala. 75 ; Kimball v. Ives, 17 Ver. 430.

The holding of Mr. Gilmer is confessedly adverse to Mrs. Fleming. This, however, had not existed long enough, if the statement of the bill be true, to perfect a bar.

[2.] It is contended, that the bill in this case is multifarious, and that the decree of the chancellor should be affirmed on that account, if for no other reason. The alleged fault of the pleader consists in the fact, that the bill unites in one and the same complaint a cause of action against McKenzie, as the executor of Spencer, the trustee; a claim against McKenzie, for hire while the slaves were in his possession, and a claim against Gilmer and wife for the slaves, and for hire while in their possession.

It is impossible to lay down a rule on the subject of multifariousness, which will be applicable to all cases. A cardinal principle is, to avoid the blending and complication of distinct matters in one suit ; while on the other hand, a needless multiplication of separate actions is equally to be deprecated. It is not essential to the unity of a bill, that each complainant or defendant shall have an equal and co-extensive interest in the entire subject-matter of the litigation. In the varying transactions of life, a compliance with such a rule would be impossible. On the other hand, it is not proper to impose on parties who have an interest in a subject of litigation onerous burdens and expenses in regard to a matter entirely disconnected, merely because another has a common interest in both subjects of contestation. Substantial harmony, with oc-

casional diversities of interest, is, perhaps, as near an approach to correctness as we can make.

In the present case, there are many, and the most important matters in controversy, which are common to all the defendants. 1st. There is a privty of title between Mr. Spencer, the testator, Mr. McKenzie, the executor, and Mrs. Gilmer, the sole legatee. If the title of Mr. Spencer be defeated, then the title of Mr. McKenzie must fall, unless his possession ripened into a title, or he acquired one in some other way. His title failing, probably the derivative title of Mrs. Gilmer would fall with it. Each party, then, is interested in every question which affects the complainant's title to the slaves. 2d. Whatever sum may be recovered out of McKenzie, as executor, for the use and hire of the slaves during Mr. Spencer's life-time, or for the use and hire while in his possession, will be a charge to that extent upon the estate of Mr. Spencer in his hands, so far as we can now perceive. Mrs. Gilmer, then, being sole legatee, is interested in this question; and although it may not have been necessary to join her as a party, if this were the only question in the case, still there would seem to be no impropriety in having her before the court. 3d. If separate suits had been brought against Mr. McKenzie, as executor, for the hire while Mr. Spencer held the slaves; against him as an individual for the hire during his own possession, and against Mr. and Mrs. Gilmer for the property, and hire while in their possession, the great underlying fact of title to the slaves would have furnished the most material subject of proof in each of those suits. Other harmonies might be pointed out, but we deem it unnecessary to pursue this discussion further. This bill is not, on its face, multifarious.—Horton v. Sledge, 29 Ala. 478; Halstead v. Sheppard, 23 Ala. 568; Brinkerhoff v. Brown, 6 Johns. Ch. 139; Felder v. Davis, 17 Ala. 418; Gaines v. Chew, 2 How. (S. C.) 619.

[3.] There was no necessity for joining the representative of the other trustee, Matthew Fleming, as a party defendant. He does not appear ever to have had the

Fleming v. Gilmer.

possession of this property, and no account is prayed against him.

[4.] It might be conceded that the children of complainant were not necessary parties to this suit, and still we think there was no impropriety in joining them as defendants. They probably have a future interest in the slaves, and any litigation which bears on the custody, title, or preservation of the *corpus* of this property, may affect their interests. In one view, it was eminently proper that they should have been before the court. Under the antenuptial contract, it was the duty of the trustees, not only to preserve and protect the title of the slaves for the separate use of Mrs. Fleming during her life, but also to hold the title for the benefit of her children after her death, in the event they survived her. The present bill seeks to bring the estate of the trustee to a settlement, and to have the possession of the slaves delivered to the life-tenant, Mrs. Fleming. The trustees being dead, it may be proper to further guard the interests of the contingent remaindermen, by the appointment of another trustee. We do not, however, say that such is the case. That question is not before us. We think, however, that in a suit which seeks to place the property out of the control of the trustee's executor, and to place it in the control of the beneficiary, there is at least no impropriety in bringing those in remainder before the court in the character of defendants.—Story's Eq. Pl. § § 207, *et seq.*

[5.] The chancellor also erred in supposing that the last clause of section 2486 of the Code bears on this case. We have uniformly held, that the provisions of the Code, which speak of the separate estates of married women, relate to their estates made separate by law, and to none others.—See Smith v. Smith, 30 Ala. 642, and authorities cited.

The decree of the chancellor is reversed, and the cause remanded.